SO ORDERED.

SIGNED this 05 day of November, 2010.

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

3G PROPERTIES, LLC                    CASE NUMBER: 10-04763-8-JRL
                                                          CHAPTER 11

DEBTOR.

_____

### ORDER DENYING RELIEF FROM AUTOMATIC STAY

This matter is before the court on Southern Community Bank & Trust's ("Southern")

motion for relief from the automatic stay.  A hearing was held on October 6, 2010 and continued

on October 7, 2010 in Raleigh, North Carolina.

### BACKGROUND

1.  On June 19, 2008, Lake Glad Road Commercial, LLC ("Commercial") executed a

note in favor of Southern in the principal amount of $3,600,000.00 (the "Commercial Note").

The Commercial Note is secured by eleven undeveloped contiguous tracts of land in Granville

County, North Carolina.  On the same date, Lake Glad Road Partners, LLC ("Partners")

executed a note in favor of Southern in the principal amount of $3,100,000.00 (the "Partners

Note").  The Partners Note is secured by two undeveloped tracts of land also in Granville County

which are adjacent to tracts of land securing the Commercial Note.

2.  On June 14, 2010, Commercial and Partners merged with a third entity known as Granville Park Partners, LLC.  The debtor, 3 G Properties, LLC,  is the resulting entity from the merger.  On the same date, the debtor filed for relief under chapter 11 of the Bankruptcy Code. The debtor's Schedule A lists the aggregate value of the subject properties as $8,285,000.00. The debtor's Schedule A and D indicate that Southern holds two secured claims in the aggregate amount of $6,767,611.86.

3.  The properties at issue are situated along Highway 56, in the city of Creedmoor near the town of Butner and I-85.  It is the intent of the debtor to develop the properties collectively into a mixed-use community known as Highland Trails.   Highland Trails totals approximately 250 acres. The commercial portion of the development would encompass 58 acres, while the remaining 192 acres would accommodate approximately 340 residential home sites.

4.  The debtor also owns raw land commonly known as Triangle Park North.  Before the merger, Triangle Park North was an asset of Granville Park Partners.  This separate real estate project is being developed in connection with the State of North Carolina as an expansion of the Research Triangle Park.  The debtor intends to reorganize, and fund further development of Highland Trails with revenue generated from the development of Triangle Park North.

**DISCUSSION**

Southern requests relief from the automatic stay under both prongs of § 362(d), both "for cause" based on a  lack of adequate protection, and because the debtor lacks equity in the property and it is not necessary for an effective reorganization.  Under both provisions, the value of the property becomes central to the court's determination.  The Bankruptcy Code provides no

2

bright-line rule for establishing valuation; however, "[w]here property values have declined . . . as a result of a depressed economy, the court, in valuing the property . . . must look at the situation realistically and in light of the most reasonably commercial disposition of real estate practicable in the circumstances."  21 AM. JUR. Proof of Facts 3d 769 § 4 (2010)(citing In re Nat'l Real Estate Ltd. P'ship II, 87 B.R. 986, 990 (Bankr. E.D.Wis. 1988)).

There are three appraisals of Highland Trails in contention with one another, the first completed in April 2008.  On April 30, 2008, Frank Leatherman ("Leatherman), a North Carolina real estate appraiser, appraised Highland Trails "as is" for $7,510,000.00.  In the interim between the first and latter appraisals, the property was listed for sale.  Commercial and Partners listed the property with John LaRocca ("LaRocca"), a real estate broker who specializes in commercial real estate transactions.  The property was on the market from June 1, 2009 through May 2010, at a list price of $7,000,000.00.  At the hearing, LaRocca testified that during the listing period he received approximately a dozen unsolicited inquiries.  No written offers were made.  In his professional capacity, LaRocca stated that on the whole properties are maintaining value.  However, Highland Trails is subject to the caveat that large tracts of development land appeal to a much smaller pool of buyers.

On March 25, 2010, the second appraisal of the property was completed by Jonathan Chapman ("Chapman").  Chapman appraised the value of the land in total for $4,080,000.00. This figure was broken down as $1,810,000.00 for the portion of the property intended for residential use, and $2,270,000.00 for the property to be used commercially.  Although Chapman indicated in his written report that an 8.64% population increase is expected to affect the location surrounding the property by 2014, his ultimate opinion of the current highest and best use is to

"sit on it."  The appraisal acknowledges its own faults - that those comparable properties having closed transactions date back to 2008.  This, however, is not the only problem with the comparable sales.  The bigger issue is that only one of three comparables is located in Granville County.  The other two properties are located in the northern portion of Durham County, in an unincorporated community known as Bahama.  The court appreciates that finding comparables for a property such as Highland Trails is a difficult task in the current market.  However, the value of property in rural Bahama more than two years ago seems irrelevant to an analysis of Highland Trails.  While Chapman's prediction that the market will not demand development for Highland Trails within the next two years may ultimately be correct, it remains speculative.  Use of the Bahama properties within the analysis deflates what would otherwise be a solid representation of current value.

Subsequently, on May 7, 2010 the final appraisal was conducted.  The third appraisal was prepared by Frank Leatherman.  Leatherman's previous 2008 appraisal was commissioned by Southern; the 2010 appraisal was for the benefit of the debtor.  In 2010, Leatherman valued the residential portion of the property at $4,535,000.00 and the commercial portion at $3,750,000.00 for a total value of $8,285,000.00.  In his summary of the comparable land sales, for both the residential and commercial portions, Leatherman states that "price levels in the area and region have increased over the period [of time] . . . [and that comparable] sales will be adjusted upward, based on a 3% per year time adjustment in all years except for 2007."  This conclusion flies in the face of all other reports concerning the current economic climate.  Moreover, the 2010 appraisal appears to rely heavily on the 2008 appraisal.  With the exception of the 2009 Fox Road comparable, the two appraisals contain the same comparables dating back to 2005 and

4

2006.  While more recent in time, Fox Road is in the northern part of Wake County near high traffic areas of heavy commercial development.  Perhaps most disparaging is Leatherman's testimony at the hearing that he was unaware Highland Trails had been listed for sale within the last year.  Crediting LaRocca's assertion that the property garnered little to no interest while listed for $7,000,000.00, it would seem nonsensical to place a higher value on Highland Trails. The inclusion of Fox Road and the upward adjustments made to valuations while not accounting for the marketing period is unrealistically optimistic.  The court cannot in good faith countenance Leatherman's 2010 appraisal as accurate.

Considering the varying appraisals, the previous marketing period and the current economic climate, Southern correctly asserts the lack of an equity cushion in Highland Trails. This alone, however, does not justify lifting of the stay. A secured creditor's interest under § 362(d)(1) is not adequately protected "if the security is depreciating during the term of the stay." U. Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, 484 U.S. 365, 370, 108 S. Ct. 626, 630 (1988).  In the present case, all evidence is to the contrary.  Each of the witnesses providing testimony with ties to the current real estate market stated that the market was stable with beginning signs of correction.  Of importance is the testimony that developers and companies that were not previously in the North Carolina real estate market are beginning to investigate prospects.  It is not unlikely that Highland Trails may be an attractive prospect to such a developer.

Although lifting the stay for lack of adequate protection pursuant to § 362(d)(1) is not an appropriate measure, the burden shifts to the debtor to state why this property is necessary for an effective reorganization. 11 U.S.C. § 362(d)(2)(B); Timbers, 484 U.S. 365 at 375, 108 S. Ct. 626

at 633 (1988).  Supported by counsel's forecast of the debtor's plan and the testimony of Jim

Adams ("Adams"), a managing member of the debtor, the second prong of § 362 is satisfied.  At

the hearing, Adams described the debtor's dual approach to their plan of reorganization -

continue to develop Highland Trails with revenue generated from development of Triangle Park

North while simultaneously listing the property for sale.  Adams contends that the merger

benefits the debtor's creditors by enhancing the ability for development, and providing more

equity to which they may ultimately look for payment.  To wit, the debtor already has a contract

with a pharmaceutical company for the purchase of 50 acres of Triangle Park North in the

approximate amount of $2,500,000.00.  It was uncontested that equity exists in Triangle Park

North.  Adams further asserted that the managing members of the debtor are prepared to make

personal investments to reach the goal of successful reorganization. In addition to personal

funding, the debtor's managing members have considered additional partners who could invest

capital in the debtor.

        To effectuate the second part of its dual plan, the debtor made an application to employ

NAI Carolantic Realty, Inc. ("NAI"), which was granted by this court on October 8, 2010.

During the hearing, Scott Hadley ("Hadley"), a real estate broker for NAI, asserted that NAI

would be employed to list both Highland Trails and Triangle Park North.  The listing price for

Highland Trails in its entirety was $7,300,000.00.  Hadley stated that while this price is slightly

north of the previous listing, it was fair and reasonable under current market conditions.  In

Hadley's opinion, the 2009 listing was during the absolute bottom of the real estate downturn.

Hadley further stated that there appears to be on an upward trend as pre-existing inventory is

absorbed into the market necessitating the resurgence of new development.  Highland Trails may

6

be particularly attractive to developers because it already has some of the permitting and infrastructure necessary for water and sewer, including certain high density allotments.

Debtor's counsel expanded upon the testimony of Adams and Hadley, providing further insight into the forthcoming proposed plan of reorganization.  The intent of the merger which created the debtor was to improve the position of Southern.  Independent of the court's determination of valuation, the debtor proposes to treat the loans made by Southern as fully secured.  Terms of repayment will entail amortization over a reasonable period of years and subject to a call.  Furthermore, cross-collateralization in Triangle Park North is a possibility which would provide Southern with additional security.

Southern is unmistakably an undersecured creditor of the debtor.  However, the record before the court suggests that at worst Southern's collateral will maintain value going forward. In addition, the debtor has the exclusive right to propose a plan of reorganization.  11 U.S.C. § 1121(b).[1]  While the debtor's plan for reorganization has yet to be filed, the debtor has sufficiently shown that the subject property is necessary for an effective reorganization and that such reorganization is possible within a reasonable time.  Timbers, 484 U.S. 365 at 375, 180 S.Ct. 626 at 633.

## CONCLUSION

Based on the foregoing, the motion for relief from stay is **DENIED**.

## END OF DOCUMENT

---

[1]The court entered an order on October 7, 2010 extending the exclusivity period for filing a chapter 11 plan to November 12, 2010.

7